UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

KENDRICK L. ADAMS,               )
                                 )
        Plaintiff,               )
                                 )
    v.                           )        CIVIL NO.  1:17cv47
                                 )
NANCY A. BERRYHILL, Acting       )
Commissioner of Social Security, )
                                 )
        Defendant.               )

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant

Commissioner of Social Security Administration denying Plaintiff's application for Supplemental

Security Income (SSI) as provided for in the Social Security Act.  42 U.S.C. §416(I).  Section

205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a

certified copy of the transcript of the record including the evidence upon which the findings and

decision complained of are based.  The court shall have the power to enter, upon the pleadings

and transcript of the record, a judgment affirming, modifying, or reversing the decision of the

[Commissioner], with or without remanding the case for a rehearing."  It also provides, "[t]he

findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be

conclusive. . . ."  42 U.S.C. §405(g).  The law provides that an applicant for disability insurance

benefits must establish an "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to last for a

continuous period of not less than 12 months. . . ."  42 U.S.C. §416(i)(1); 42 U.S.C.

§423(d)(1)(A).  A physical or mental impairment is "an impairment that results from anatomical,

physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1.  The claimant has not engaged in substantial gainful activity since September 17, 2013, the application date (20 CFR 416.971 *et seq.*).

2.    The claimant has the following severe impairments: degenerative disc disease and carpal tunnel syndrome (20 CFR 416.920(c)).

3.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he: can stand two hours during the workday; can never climb ladders, ropes, or scaffolds; can occasionally climb stairs and ramps and stooping; unlimitedly balance; but never kneel, crouch, or crawl. The claimant can frequently reach overhead bilaterally and frequently handle, and finger on the right. He can tolerate frequent exposure to cold, heat, humidity, fumes, odors, dusts, gases, and other pulmonary irritants; unprotected heights, and moving mechanical parts. A cane is needed for balancing, walking, and standing. The claimant can be around co-workers during the day with only occasional interaction, but no tandem or team tasks and no tasks where one production step relies on the others. He cannot interact with the public.

5.    The claimant is unable to perform any past relevant work (20 CFR 416.965).

6.    The claimant was born on August 14, 1977 and was 36 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.    The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled,"whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10.   The claimant has not been under a disability, as defined in the Social Security Act, since September 17, 2013, the amended onset date and the date the application was filed (20 CFR 416.920(g)).

(Tr. 105- 114)

Based upon these findings, the ALJ determined that Plaintiff was not entitled to SSI benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed his opening brief on May 31, 2017. On August 11, 2017, the defendant filed a memorandum in support of the Commissioner's decision, to which Plaintiff replied on August 25, 2017. Upon full review of the record in this cause, this court is of the view that the ALJ's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

On September 17, 2013, Plaintiff filed a Title XVI application for Supplemental Security Income alleging disability beginning June 1, 2001. (AR 103) Plaintiff's application was denied

initially, upon reconsideration and in an October 13, 2015 decision following a hearing held by ALJ Margaret Carey. *Id*. Plaintiff requested review by the Appeals Council, and the Appeals Council denied this request on December 9, 2016, leaving the decision of the ALJ as the final decision of the Commissioner. (AR. 1) This Court has jurisdiction pursuant to 42 U.S.C. § 1383(c).

Plaintiff was born on August 14, 1977. (AR. 69) He was six feet four inches tall and weighed 275 pounds. *Id*. Dr. Ashish Ansal, M.D., treated Plaintiff from 2000 through July 16, 2015. (AR. 1132) Dr. Ansal diagnosed Plaintiff with cervical radiculopathy, status post L4-S1 decompression and status post posterior lateral fusion at L5-S1; associated symptoms included low back pain, neck pain, and paresthesias. (AR. 1132-1133) Dr. Ansal opined that Plaintiff was able to sit for two hours of an eight hour day and could stand or walk for two hours of an eight hour day. (AR. 1134) The doctor stated Plaintiff could occasionally lift or carry up to ten pounds and could occasionally grasp objects, perform fine manipulations with his fingers or hands, and reach overhead. (AR. 1134-1135) His symptoms would frequently interfere with his attention and concentration during the workday and symptoms would increase if placed in a competitive work environment. (AR. 1135) Plaintiff would require unscheduled breaks at unpredictable intervals throughout the workday. *Id*.

In August 2014, treating registered nurse practitioner, Dale Benton, RN MS FNP BC, stated that Plaintiff was diagnosed with cervical radiculopathy, status post L4-S1 decompression and status post posterior lateral fusion at L5-S1 (AR. 1148); associated symptoms included low back pain, neck pain, paresthesias to arms and lower legs, and pain when walking further than 150 feet. (AR. 1149) Plaintiff had significant limitations in reaching, handling, and fingering; he

5

could only occasionally grasp objects, perform fine manipulations with his fingers or hands, and reach overhead. (AR. 1150) His symptoms would frequently interfere with his attention and concentration during the workday and symptoms would increase if placed in a competitive work environment. *Id.* Plaintiff would require unscheduled breaks at unpredictable intervals throughout the workday. *Id.*

Treating psychiatrist, Dr. Jyoti Warikoo, M.D., diagnosed Plaintiff with major depressive disorder and panic disorder with symptoms including "sad mood, anxiety, sleep problems" and pain which affected his functional limitations. (AR. 1171-1172, 1175) He opined that symptoms would frequently interrupt Plaintiff's concentration and attention during an eight hour workday; he would require up to four breaks of 20-30 minutes each at unpredictable intervals. (AR. 1174) He would be absent up to three times a month due to his impairments. (AR. 1175) He would have moderate to marked limitations in a number of areas including the following: carrying out detailed instructions, maintaining attention and concentration, performing at a consistent pace without rest periods of unreasonable length or frequency, and getting along with coworkers. (AR. 1118) Plaintiff was treated with Vistaril and Celexa for depression and anxiety. (AR. 1108, 1110, 1116, 1123, 1127)

An MRI in May 2006 revealed moderate degenerative disc disease at L4-S1 with moderate diffuse disc bulges and small central posterior disc protrusions with mild lower lumbar spine degenerative facet disease. (AR. 457). A lumbar x-ray in January 2013 showed severe narrowing of the disc at L5-S1 with subchondral sclerosis; when compared to testing from two years prior, the condition had worsened. (AR, 462) A November 2013 x-ray revealed straightening of the spine and disc space narrowing at L5-S1; there were moderate to severe

degenerative changes. (AR. 679) A February 2014 MRI of the lumbar spine showed multilevel degenerative disc disease with degenerative facet arthropathy. (AR. 682) A CT scan on May 5, 2014 showed significant degenerative changes at L4-S1 with spondylolysis. (AR. 696)

On May 9, 2014 Plaintiff underwent transforaminal lumbar interbody fusion surgery. (AR. 723) He also had laminectomy procedures performed at L4 and L5 with decompression of nerve roots with the insertion of pedicel screws into L4. (AR. 728) He was in recovery at the hospital and discharged on May 22, 2014. (AR. 723) He was prescribed a rolling walker, a bath bench and grab bars. (AR. 726) After the procedure, Plaintiff continued to complain of pain; he had daily throbbing lower back, left buttock, and left leg pain. (AR. 738)

Plaintiff testified that he lived with his mother in Chicago. (AR. 26) He had a driver's license but no longer drove due to back and knee pain. (AR. 27-28) He did not smoke or use alcohol. (AR. 30) His past work involved labor oriented positions such as laying carpet and construction jobs requiring heavy lifting. (AR. 31-33) He was unable to work because he could not sit or stand for more than 15-30 minutes at a time due to shooting pain from his back through his legs. (AR. 36-37) He was able to walk a half block before needing to rest his legs and back. (AR. 38) Plaintiff was diagnosed with fibromyalgia that affected his entire body causing muscles to tighten up preventing him from moving. (AR. 38-39) His hands and fingers cramped when he attempted to use them. (AR. 39) He had neck pain that radiated to the side of the head and caused a sharp radiating pain through the arms. (AR. 43) Plaintiff had difficulty reaching and holding his arms up for very long; his hands and fingers caused him difficulty with tasks such as cutting his food. (AR. 43-44) He used a cane to walk and stand; on bad days, three days a week, he would use a walker. (AR. 45) Plaintiff was prescribed pain medication; it caused him to feel drowsy and

he needed to sleep during the day on a daily basis. (AR. 46)

Plaintiff was not good around people; he would get agitated, nervous, and anxious. (AR. 39-40) He had mood swings and preferred to be alone. (AR. 44) He had difficulty paying attention and focusing on tasks he had undertaken. (AR. 44) He spent most of his time lying down or sitting back in a recliner. (AR. 42) His brother and sister came over to "take care of the things around the house" such as cooking and cleaning. (AR. 42)

The ALJ found that Plaintiff had the severe impairments of degenerative disc disease and carpal tunnel syndrome; he had the non-severe impairments of obesity, glaucoma, asthma, and hypertension. (AR. 105) No impairments met or medically equaled the severity of a listed impairment. (AR. 107) As noted above, the ALJ found that Plaintiff retained the residual functional capacity (RFC) to perform light work with the following exceptions: he could stand two hours during the workday; he could never climb ladders, ropes, or scaffolds; he could occasionally climb stairs and ramps and stoop; he could never kneel, crouch, or crawl; he could frequently reach overhead bilaterally and frequently handle, and finger on the right; he could tolerate frequent exposure to cold, heat, humidity, fumes, odors, dusts, gases, and other pulmonary irritants, unprotected heights, and moving mechanical parts; he required a cane for balancing, walking, and standing; he could be around co-workers during the day with only occasional interaction, but no tandem or team tasks and no tasks where one production step relied on the others; he could not interact with the public. *Id.* Plaintiff was unable to perform past relevant work, yet was able to perform other jobs that existed in significant numbers in the national economy. (AR. 112)

In support of remand, Plaintiff first argues that the ALJ improperly evaluated the treating

source opinions. The ALJ afforded non-examining State agency medical consultant, Dr. Francis Vincent, M.D., great weight in determining Plaintiff's RFC, while giving partial, minimal, and limited weight to each of three treating source opinions from Dr. Ansal, Dr. Warikoo, and RN Benton, respectively. (AR. 110-111) Treating source opinions are deserving of controlling weight when the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. *See* 20 C.F.R 416.927(c)(2). When controlling weight is not given to a treating source, the ALJ is required to properly analyze the opinion using factors such as the examining and treatment relationship, length of treatment and frequency of examination, nature and extent of treatment relationship, supportability, and consistency. 20 C.F.R. 416.927(c)(2)(i)-(6). Plaintiff claims that these treating source opinions were not evaluated according to the factors listed in 416.927.

As noted, Dr. Ansal diagnosed Plaintiff with cervical radiculopathy, status post L4-S1 decompression and status post posterior lateral fusion at L5-S1. (AR. 1132-1133) He stated that associated symptoms included low back pain, neck pain, and paresthesias. *Id*. Dr. Ansal opined that Plaintiff was able to sit for two hours of an eight hour day and could stand or walk for two hours of an eight hour day. (AR. 1134) Plaintiff could occasionally lift or carry up to ten pounds and could occasionally grasp objects, perform fine manipulations with his fingers or hands, and reach overhead. (AR. 1134-1135) His symptoms would frequently interfere with his attention and concentration during the workday and symptoms would increase if placed in a competitive work environment. (AR. 1135) Plaintiff would require unscheduled breaks at unpredictable intervals throughout the workday. *Id.*

In affording Dr. Ansal partial weight, the ALJ determined that the two hour standing

limitation was warranted, but the remainder of the opinion was not supported by objective evidence. (AR. 111) Plaintiff points out that this was not the case. An MRI in May 2006 revealed moderate degenerative disc disease at L4-S1 with moderate diffuse disc bulges and small central posterior disc protrusions with mild lower lumbar spine degenerative facet disease. (AR. 457) A lumbar x-ray in January 2013 showed severe narrowing of the disc at L5-S1 with subchondral sclerosis. (AR. 462) When this was compared to testing from two years prior, the condition had worsened. *Id*. A November 2013 x-ray revealed straightening of the spine and disc space narrowing at L5-S1; there were moderate to severe degenerative changes. (AR. 679) A February 2014 MRI of the lumbar spine showed multilevel degenerative disc disease with degenerative facet arthropathy. (AR. 682) In reviewing this MRI, Dr. Julie Williams, M.D. stated these "findings correlate with the severity of pain [the patient] reports". (AR. 690-691) A CT scan on May 5, 2014 showed significant degenerative changes at L4-S1 with spondylolysis. (AR. 696) Plaintiff contends that these diagnostic tests were not inconsistent with the limitations discussed in Dr. Ansal's opinion despite the ALJ's claim to the contrary.

Plaintiff notes that physical exams throughout the record also supported Dr. Ansal's opinion. State agency consultative examiner, Dr. Dante Pimentel, M.D., examined Plaintiff on October 28, 2013; he found a reduced range of motion in the bilateral shoulders, hip, knees and in the lumbar spine. (AR. 649-650) Plaintiff walked with a left-sided limp, and could walk 10-15 feet without a cane, and 20-30 feet with a cane before needing to sit due to pain. (AR. 647) Dr. Pimentel noted that Plaintiff's ability to lift, carry and handle objects, and his ability to carry out work-related activities was impaired due to back pain. (AR. 648) Plaintiff went to a walk-in clinic in October 2013 for hip and lower extremity pain; physical exam revealed limited range of

motion in the extremities and the straight leg test elicited pain bilaterally in the upper legs. (AR. 660) Dr. Williams noted that Plaintiff's lower left back was tender to palpation. (AR. 716) Similarly, upon exam, Dr. Ansal noted "tenderness to palpation from neck to back to elbows and knees + trigger points for fibromyalgia". (AR. 1224) Dr. Herbert Engelhard, III, M.D., examined Plaintiff prior to his May 9, 2014 surgery; he found that Plaintiff had a "slight weakness of dorsiflexion and plantar flexion bilaterally with a decreased ankle jerk reflex on the left." (AR. 1097) He noted that Plaintiff had "a markedly antalgic gait" and that he "assumes a bent over posture." *Id.* Plaintiff argues that these physical exam findings provided significant support to Dr. Ansal's opinion on Plaintiff's limitations in work related abilities. Per 416.927(c)(2), Plaintiff concludes that Dr. Ansal's opinion was well-supported by medically acceptable clinical and laboratory diagnostic techniques and was not inconsistent with the other substantial evidence in the case record and, therefore, deserved controlling weight.

Treating psychiatrist Dr. Warikoo diagnosed Plaintiff with major depressive disorder and panic disorder with symptoms such as "sad mood, anxiety, sleep problems" and pain which affected his functional limitations. (AR. 1171-1172, 1175) He opined that symptoms would frequently interrupt Plaintiff's concentration and attention during an eight-hour workday; he would require up to four breaks of 20-30 minutes each at unpredictable intervals. (AR. 1174) He would be absent up to three times a month due to his impairments. (AR. 1175) Dr. Warikoo found that Plaintiff would have moderate to marked limitations in a number of areas including the following: carrying out detailed instructions, maintaining attention and concentration, performing at a consistent pace without rest periods of unreasonable length or frequency, and getting along with coworkers. (AR. 1118) The ALJ afforded Dr. Warikoo's opinion "minimal weight" because

the Plaintiff "admitted that his anxiety was well controlled and that his mood improved." (AR. 111) Yet, Plaintiff testified that he did not do well around other people due to being agitated, anxious, nervous and depressed. (AR. 39-40) He experienced mood swings and wanted to be alone; he had difficulty focusing and finishing tasks he had begun. (AR. 44) The treatment notes that the ALJ cited for controlled anxiety and improved mood contained notes from Dr. Warikoo describing Plaintiff's affect as "congruent and constricted". (AR. 1185, 1190) The ALJ also stated that mental status exams indicated that Plaintiff was cooperative, oriented, had good insight and judgment, and had adequate attention, concentration, and memory. (AR. 111) Plaintiff argues that these qualities displayed at a brief appointment with the doctor did not undermine any of the limitations about which Dr. Warikoo opined. Moreover, Plaintiff's diagnosis warranted his continual treatment with Vistaril and Celexa for depression and anxiety. (AR. 1108, 1110, 1116, 1123, 1127) Plaintiff contends that the ALJ did not offer sound explanations for the weight afforded to Dr. Warikoo's opinion and that the opinion was supported and not inconsistent with other evidence, it was deserving of more weight.

Because this treating psychiatrist was not given controlling weight, the ALJ was still required to analyze the opinion using factors as noted above: examining and treatment relationship, length of treatment and frequency of examination, nature and extent of treatment relationship, supportability, and consistency. 20 C.F.R. 404.1527(c)(1)-(6). Plaintiff argues that the ALJ did not apply these factors nor explain the weight given to the opinion in any more detail than comparing it to one statement made by Plaintiff, and the fact that Plaintiff was, among other things, cooperative at appointments. (AR. 111) Dr. Warikoo treated Plaintiff from April 2014 through September 2015 every eight weeks. (AR. 1171) Plaintiff argues that his diagnosis and

treatment was not inconsistent with other evidence of record.

In August 2014, RN Benton stated that Plaintiff was diagnosed with cervical radiculopathy, status post L4-S1 decompression and status post posterior lateral fusion at L5-S1; (AR. 1148) associated symptoms included low back pain, neck pain, paresthesias to arms and lower legs, and pain when walking further than 150 feet. (AR. 1149) Plaintiff had significant limitations in reaching, handling, and fingering; he could only occasionally grasp objects, perform fine manipulations with his fingers or hands, and reach overhead. (AR. 1150) His symptoms would frequently interfere with his attention and concentration during the workday and symptoms would increase if placed in a competitive work environment. *Id*. Plaintiff would require unscheduled breaks at unpredictable intervals throughout the workday. *Id.*

The ALJ determined RN Benton's opinion deserved limited weight in that there was "no evidence that the claimant's attention and concentration would be affected" to the degree as opined. (AR. 110) Yet, as Plaintiff notes, evidence was found in each of the opinions described above: both Dr. Warikoo and Dr. Ansal opined to the same difficulties in maintaining attention and concentration. (AR. 1135, 1174) Furthermore, Plaintiff testified to these difficulties at the hearing, as stated above. He did not do well around other people due to being agitated, anxious, nervous and depressed. (AR. 39-40) He experienced mood swings and wanted to be alone and he had difficulty focusing and finishing tasks he had begun. (AR. 44)

Regardless of what weight the ALJ gave RN Benton's opinion, the proper analysis was required. Per the regulations, the ALJ was required to evaluate the examining and treatment relationship, length of treatment and frequency of examination, nature and extent of treatment relationship, supportability, and consistency. 20 C.F.R. 416.927(c)(2)(i)-(6). Plaintiff points out

that RN Benton had treated Plaintiff from 2000 through August 2014 with appointments every six to eight weeks. (AR. 1148) RN Benton's opinions on physical limitations were supported and consistent with the many diagnostic tests and physical exams outlined above and Plaintiff argues that the limitations caused by Plaintiff's mental impairments were supported and consistent with Dr. Warikoo and Plaintiff's own testimony.

Plaintiff maintains that the opinions of treating sources Dr. Ansal, Dr. Warikoo and RN Benton were all consistent with each other. Each opined that Plaintiff would require unscheduled breaks throughout the workday at unpredictable intervals and that Plaintiff's symptoms would frequently interfere with his attention and concentration during the workday. (AR. 1135, 1174, 1150) Plaintiff concludes that the ALJ did not properly consider nor weigh these opinions as required by the regulations, and had the opinions been properly evaluated, Plaintiff would likely have been found disabled. The vocational expert testified that a person would not be able to work if requiring breaks outside of the normal allowable breaks. (AR. 52) Plaintiff points out that all three sources opined that Plaintiff was unable to conform to such a schedule, thus requiring a determination that Plaintiff was disabled. (AR. 1135, 1174, 1150)

The Commissioner defends the ALJ's explanation that Dr. Ansal's opinion deserved only partial weight because the evidence Plaintiff cited in support of Dr. Ansal's opinion predated Plaintiff's surgery. (Commissioner's brief, pp. 4-5) Yet, the Commissioner supports the ALJ's adoption of Dr. Vincent's April 2014 opinion, which also predates the surgery. (AR. 96, 110-11) The Commissioner's argument contends that the ALJ appropriately relied on Dr. Vincent's opinion which was offered prior to the surgery, whereas it was inappropriate to support Dr. Ansal's opinion with any pre-surgery evidence. (Plaintiff's brief, pp. 4, 8-9) This double standard

is not reasonable support for the ALJ's explanation. Furthermore, while arguing the surgery to be of determinative value in Plaintiff's record, the Commissioner defends the ALJ's reliance on a pre-surgery opinion, one that, as the Commissioner acknowledges, asserted that surgery was unnecessary in the first place. (Commissioner's brief, footnote 4, pp. 8-9)

Clearly, however, post surgery evidence also supports Dr. Ansal's opinions. A July 2014 x-ray showed a straightening of the lordosis which "may represent paraspinal muscle spasm". (AR. 1102) Nurse Benton and Dr. Ansal's treatment notes from post surgery through 2015 included the following: back pain "waxes and wanes" and neck pain (AR. 1280); "achy and sharp" pain and referred to MRI (AR. 1279); diagnosed with "acute neck pain" (AR. 1275); Plaintiff's legs buckled, he fell in a store, and requested a wheelchair (AR. 1271); neck pain and back pain "in the middle of the back" *Id.*; diagnosed with lower back pain, buttock pain, left leg pain (AR. 1203, 1212, 1230, 1267, 1256, 1247, 1240, 1310-1311, 1323); chronic pain and neck pain (AR. 1233, 1242, 1251, 1265); neck pain and back pain which is "severe" and "most of the time" (AR. 1259); severe, radiating lower back pain (AR. 1208, 1226, 1235, 1244, 1255, 1308); diagnosed with fibromyalgia and cervical radiculopathy (AR. 1203, 1212, 1230, 1239, 1247, 1310-1311, 1324); "tenderness to palpation from neck to back to elbows to and knees + trigger points for fibromyalgia" (AR. 1224, 1233, 1242); "worsening right lower back pain, specifically the hip and right buttock" (AR. 1201, 1208, 1217, 1226, 1340); stable right lower back, hip, and buttock pain (AR.1306); "back pain: in the upper region, in the middle of the back, in the lower region" (AR. 1308); diagnosed with chronic back pain (AR. 1321, 1340). Clearly, this significant evidence post- dating Plaintiff's surgery undermines the Commissioner's statement that the "most significant abnormal findings predate his May 2014 surgery." (Commissioner's brief, p. 4)

The Commissioner again argues a double standard in defending the ALJ's decision to afford minimal weight to Dr. Warikoo's opinion. In particular, the Commissioner argues that ALJ reasonably discounted the opinion because Plaintiff "admitted his anxiety was well controlled and his mood improved." (Commissioner's brief, p. 6) In the next paragraph, however, the Commissioner then attacks Plaintiff's arguments for also pointing to Plaintiff's own statements that his mental symptoms were not well controlled and that he continued to experience significant limitations. *Id.* While the Commissioner asserts that the ALJ resolved this conflict in the evidence, no showing of this resolution was ever made. Thus, the ALJ failed to explain she relied on some of Plaintiff's statements in evaluating Dr. Warikoo's opinion and not others. A conclusive resolution between this conflict was required. *Diaz v. Chater*, 55 F. 3d 300, 306-307 (7th Cir. 1995)("That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict"); *Stephens v. Heckler*, 766 F. 2d 284, 287 (7th Cir. 1985)("The medical evidence was conflicting...someone had to resolve the conflict, and under the statute that someone is the Secretary's delegate.").

The Commissioner argues that "constricted affect" is not evidence of "significant abnormal limitations" that would support "a need to miss more than three days per month". (Commissioner's brief, p. 7) However, this medical conjecture was not an argument relied upon by the ALJ and is thus not one to be newly presented in a brief. "[P]rinciples of administrative law require the ALJ to rationally articulate the grounds for her decision and confine our review to the reasons supplied by the ALJ. That is why the ALJ (not the Commissioner's lawyers) must "build an accurate and logical bridge from the evidence to her conclusion."" *Steele v. Barnhart*, 290 F. 3d. 936, 941 (7th Cir. 2002)(citations omitted)(emphasis in original).; *See SEC v. Chenery*

*Corp.*, 318 U.S. 80, 93-95, 63 S. Ct. 454, 87 L. Ed. 626 (1943); *Jelinek v. Astrue*, 662 F. 3d 805, 812 (7th Cir. 2011) ("We have made clear that what matters are the reasons articulated by the ALJ). Dr. Warikoo's opinion was the only examining mental health opinion of record. As a treating psychiatrist and a specialist, her opinion was deserving of great weight. 20 C.F.R. 416.927(c)(1)-(6); *Scott v. Astrue*, 647 F. 3d 734, 739 (7th Cir. 2011)("An ALJ must offer 'good reasons' for discounting the opinion of a treating physician.")(citations omitted) The Commissioner contends that the ALJ reasonably determined that Nurse Benton did not adequately explain his opinions. (Commissioner's brief, pp. 7-8) However, in support of his opinions, Nurse Benton discussed Plaintiff's diagnoses, symptoms, pain levels and locations, and treatments. (AR. 1148-1150) His treatment notes, as noted above, also document support for his opinions.

Plaintiff points out that medical opinions often come in the shape of the form a medical professional was asked to complete. And in Plaintiff's case, Nurse Benton filled out the form fully and completely, and the form was supported by his extensive treatment notes. *See Larson v. Astrue*, 615 F. 3d 744, 750-751 (7th Cir. 2010) ("In response, the Commissioner makes much of the fact that Dr. Rhoades did not explain on the questionnaire his conclusion that Larson had experienced repeated episodes of decompensation. But in every section on the questionnaire that allowed for comments, Dr. Rhoades made them; the question dealing with Larson's functional limitations and episodes of decompensation did not invite further explanation or include space for comments. Although by itself a check-box form might be weak evidence, the form takes on greater significance when it is supported by medical records"), citing *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir.1993); *see also Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir.1999) (upholding ALJ's rejection of physician's check-box form where it was contradicted by evidence in the

record). The Commissioner argues that the ALJ had no need to specifically consider the extensive treatment Nurse Benton provided Plaintiff. (Commissioner's brief, p.8) However, as Plaintiff argued in his opening brief, this treatment history, when combined with the consistency and supportability of Nurse Benton's opinion with other evidence of record, contributed to a strong, treating source opinion. However, the ALJ did not provide strong reasoning in rejecting it. *Punzio v. Astrue*, 630 F. 3d 704, 710 (7th Cir. 2011)("...whenever an ALJ does reject a treating source's opinion, a sound explanation must be given for that decision."); 20 C.F.R. 416.927(c)(2)("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").

In the present case, the ALJ failed to adequately explain how the medical record supported Dr. Vincent's opinion; he cited isolated facts such as the use of a walking aid to support certain limitations, but failed to analyze or consider the record as a whole. (AR. 110) Given the great weight that was afforded to this non-examining physician over three examining treating doctors, the ALJ was required to offer more explanation than was given. This was especially true, as Plaintiff argues, given that Dr. Vincent's opinion was rendered pre-surgery and prior to the submission of new evidence and the ALJ never asked Dr. Vincent for an updated opinion. Dr. Vincent's opinion was given great weight despite its inconsistency with the three treating physician opinions. *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)("An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice."). Moreover, Plaintiff cited significant evidence submitted subsequent to Dr. Vincent's opinion that did not support his outdated opinion. (Plaintiff's brief, pp. 13-14).

In light of all the errors noted above in connection with the appropriate weight to be given to the various medical opinions, this court must remand this case for further proceedings so that the medical opinions may be properly analyzed and weighted.

Next, Plaintiff argues that the ALJ erred in failing to properly evaluate his RFC. In determining Plaintiff's RFC, the ALJ gave great weight to non-examining State agency medical consultant, Dr. Vincent. (AR. 110) Yet, Dr. Vincent rendered his opinion on April 18, 2014 (AR. 96) and did not consider any evidence submitted after this date; the evidence of record contained over 650 pages of medical evidence submitted after April 18, 2014. (AR. 697-1350) Plaintiff argues that, for this reason, Dr. Vincent's opinion could not have reasonably been relied upon. *Campbell v. Astrue*, 627 F. 3d 299, 309 (7th Cir. 2010) (ALJ erred in relying on State agency physician when significant evidence was admitted to the record after that review); *Childress v. Colvin*, 845 F. 3d 789, 792 (7th Cir. 2017)(State agency opinions that did not have access to the full medical record were correctly afforded little weight). Furthermore, Plaintiff claims that the ALJ should have requested an updated State agency opinion or otherwise submitted the latter evidence to medical scrutiny. *Stage v. Colvin*, 812 F. 3d 1121, 1125 (ALJ cannot interpret medical evidence on his own to determine subsequent functional limitations); *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014). ("ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves."); *Goins v. Colvin*, 764 F. 3d 677, 680 (7th Cir. 2014)(ALJ erred when "playing doctor" and interpreted MRI results without expert input).

As noted above, the record shows that a significant amount of evidence was submitted after April 18, 2014. A CT scan on May 5, 2014 showed significant degenerative changes at

L4-S1 with spondylolysis. (AR. 696) On May 9, 2014 Plaintiff underwent transforaminal lumbar interbody fusion surgery. (AR. 723) He also had laminectomy procedures performed at L4 and L5 with decompression of nerve roots with the insertion of pedicel screws into L4. (AR. 728) He was in recovery at the hospital for almost two weeks and discharged on May 22, 2014. (AR. 723) He was prescribed a rolling walker, a bath bench and grab bars. (AR. 726) After the procedure, Plaintiff continued to complain of pain; he had daily throbbing lower back, left buttock, and left leg pain. (AR. 738)

Dr. Vincent's opinion was also missing analysis of another CT scan in May 2014 that revealed significant disc disease at L5-S1 with posterior L5 osteophytes that narrowed the bilateral neural foramen. (AR. 1100) In December 2014 Plaintiff was involved in a car accident that exacerbated his already existing pain. (AR. 1259) Upon exam in April 2015, Dr. Ansal noted "tenderness to palpation from neck to back to elbows and knees + trigger points for fibromyalgia". (AR. 1224) In June 2015, Plaintiff continued to follow up on his chronic back pain. (AR. 1201) At an appointment with Dr. Ansal, he stated that pain in his right lower back, right hip and right buttock was worsening. *Id*. Dr. Ansal continued to document these complaints of pain through October 2015. (AR. 1308) Dr. Vincent considered none of this evidence beyond April 2014; so the ALJ's residual functional capacity assessment is based on an assumption that Plaintiff's condition had not changed despite this significant intervening evidence. This court agrees with Plaintiff that if the ALJ felt the opinions from three treating sources were insufficient to document Plaintiff's condition, the ALJ should have had the file reviewed by a medical expert. The ALJ's failure to do so was reversible error. *Stage*, 812 F. 3d at 1125; *Moon*, 763 F.3d at 722; *Goins*, 764 F. 3d at 680.

Next, Plaintiff argues that the ALJ did not properly evaluate his subjective allegations. The ALJ determined that Plaintiff's allegations were "less than fully credible". Plaintiff argues that the ALJ failed to provide adequate reasoning for this determination. (AR. 109) The ALJ explained that despite his pain Plaintiff exhibited motor strength of 5/5 at most extremities with 4/5 at the lower left extremity. (AR. 109) Yet, the ALJ offered no support for the implied contention that pain and strength are synonymous or necessarily correlated; nor did the ALJ explain which alleged pain she believed to be discounted by the cited strength results. *See Grahl v. Colvin*, No. 14–CV–295–JDP, 2015 WL 3645686 at *1 (W.D. Wis. June 10, 2015)("observations of plaintiff's leg strength does not contradict plaintiff's consistent reports of back pain").

The ALJ argued that Plaintiff's statements that lying down, and taking Morphine and Norco helped alleviate his pain detracted from his credibility. (AR. 109) Plaintiff contends however, that all of these facts support an inability to work. Lying down and the inability to work were supported by the opinions of his treating sources. Dr. Ansal, Dr. Warikoo, and RN Benton all opined that Plaintiff would require unscheduled breaks throughout the workday at unpredictable intervals. (AR. 1135, 1174, 1150) Plaintiff testified to the side effects of his medications; he stated that they caused him to feel drowsy and that he could not stand on his own at times. (AR. 46) He needed to lie down and sleep throughout the day. *Id*. *Shauger v. Astrue*, 675 F. 3d 690, 697 (ALJ failed to adequately consider that the claimant would treat symptoms by lying down); *Martinez v. Astrue*, No. 09-cv-62, 2009 WL 4611415, at *12 (N.D. Ind. Nov. 30, 2009)("the ALJ's failure to address Plaintiff's alleged need to lie down during the day requires remand because, if accepted, this testimony would appear to preclude a full range of sedentary

work, which the ALJ opined that Plaintiff could perform as part of her RFC assessment."). The reliance on such drugs for pain relief was a strong argument against full-time employment; employers would likely not support the use of drugs such as morphine in the workplace. Furthermore, prescriptions to medications such as Morphine and Norco only support Plaintiff's allegations of pain, rather than detract from them.

The Commissioner argues that there was an evidentiary basis to link motor strength and pain. In support of this argument, however, the Commissioner only cites Plaintiff's testimony. (Commissioner's brief, p. 10) Plaintiff is not a physician and such evidence does not serve to support a medical conclusion; thus, the ALJ's medical conclusion was speculation. *Martinez v. Astrue*, 630 F. 3d 690, 697 (7th Cir. 2011)("The etiology of pain is not so well understood, or people's pain thresholds so uniform, that the severity of pain experienced by a given individual can be 'read off' from a medical report.") quoting *Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006); *Carradine v. Barnhart*, 360 F. 3d 751, 751 (7th Cir. 2004)("Medical science confirms that pain can be severe and disabling even in the absence of "objective" medical findings, that is, test results that demonstrate a physical condition that normally causes pain of the severity claimed by the applicant."); 20 C.F.R. 416.929(c)(2)("we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work...solely because the available objective medical evidence does not substantiate your statements.") The Commissioner states that Plaintiff argued error when the ALJ's noted that Plaintiff's pain improved with medication. (Commissioner's brief, p. 10) This was not the case; Plaintiff did not argue that the ALJ should not consider the issue, but that the evidence did not support his finding. (Plaintiff's brief, p. 15) The Commissioner cites to a May

2014 medical record but in so doing, ignores a plethora of evidence subsequent to this date showing significant pain that supported limitations despite medications.

The ALJ noted that Plaintiff's desire to improve his guitar skills undermined his allegations of hand pain. (AR. 109) During therapy sessions with Dr. Barbara Meyer, PhD., in late 2014, Plaintiff mentioned the desire to learn to play guitar. (AR. 1184, 1187, 1189) The context of the first mention showed he was only interested in doing so, but did not have a guitar; (Ar. 1184) he then stated he had gotten a guitar; (AR. 1187) his final statement about playing the guitar was again an aspirational statement that he would like to learn how to play and improve. (AR. 1189) No statements were made about how much time, if any, was being spent on the guitar nor whether it caused pain to play or if his impairments allowed him to do so. Furthermore, the ALJ did not ask Plaintiff about this activity during the hearing to explore the issue, thus there was insufficient evidence to use it to undermine credibility. Even if Plaintiff spent any time playing guitar, there was not sufficient evidence to attack his allegations of pain, nor allegations of an inability to work. *Carradine v. Barnhart*, 360 F. 3d 751, 756 (7th Cir. 2004)(The ALJ "failed to consider the difference between a person's being able to engage in sporadic physical activities and her being able to work eight hours a day five consecutive days of the week.")

The Commissioner again mischaracterizes Plaintiff's argument by stating he argued the ALJ should not have considered his aspirations to learn guitar. (Commissioner's brief, p. 10) Rather, Plaintiff argued that a desire to learn guitar, without more, did not support the ALJ's finding that it was contrary to hand pain. (Plaintiff's brief, p. 15) The Commissioner states the ALJ was reasonable in considering Plaintiff's "attempts to learn how to play the guitar were inconsistent with his allegations of hand pain." (Commissioner's brief, p. 10) Yet, as Plaintiff

argued, there was no evidence to suggest how much time, if any, was spent actually playing guitar. (Plaintiff's brief, p. 15) Similar to cases where a claimant suggests a desire to work, a desire to play guitar is not the same as actually playing the guitar, and an individual's desire to play the guitar does not undermine complaints of hand pain. *Ghiselli v. Colvin*, 837 F. 3d 771, 778 (7th Cir. 2016)("And here, Ghiselli was not actually working but merely said that she was looking for work. While a claimant's statements in applying for work following a disability claim might be relevant to her credibility when the statements undermine the basis for her claim, such is not the case here. Persisting in looking for employment even while claiming to suffer from a painful disability might simply indicate a strong work ethic or overly-optimistic outlook rather than an exaggerated condition. In any case, the ALJ here provided no support for his conclusion that looking for a new job was inconsistent with Ghiselli's disability claim."); *Ison v. Astrue*, 2012 WL 832983 at *9 (N.D. Ill. March 12, 2012)("Courts in this Circuit and others have acknowledged that a desire to work, by itself, should not be used as a negative credibility factor because a desire to work does not necessarily imply an ability to work"). In the present case, while the Commissioner correctly notes that the ALJ did not equate the notion of learning to play the guitar to an ability to work full time, the ALJ did not cite to any other physical activities that supported his determinations. (Commissioner's brief, p. 10) Thus, noting this one physical activity to discount Plaintiff's allegations, especially when Plaintiff was not shown to be actually playing the guitar at all, was unreasonable and warrants remand.

As noted, the ALJ found that Plaintiff's allegations of mental impairments were minimized by the fact that the record had no indication of psychiatric hospitalization. (AR. 109) However, the ALJ failed to provide a logical connection between this cited evidence and her

24

conclusions. *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004)(holding ALJs must build an accurate and logical bridge from the evidence to their conclusions). Dr. Warikoo diagnosed Plaintiff with major depressive disorder and panic disorder involving a "sad mood, anxiety, sleep problems" and pain which affected his functional limitations. (AR. 1171-1172, 1175) He opined that symptoms would frequently interrupt Plaintiff's concentration and attention during an eight-hour workday; he would require up to four breaks of 20-30 minutes each at unpredictable intervals. (AR. 1174) He would be absent up to three times a month due to his impairments. (AR. 1175) Dr. Warikoo found that Plaintiff would have moderate to marked limitations in a number of areas including the following: carrying out detailed instructions, maintaining attention and concentration, performing at a consistent pace without rest periods of unreasonable length or frequency, and getting along with coworkers. (AR. 1118) Plaintiff testified that he did not do well around other people due to being agitated, anxious, nervous and depressed. (AR. 39-40) He experienced mood swings and wanted to be alone; he had difficulty focusing and finishing tasks he had begun. (AR. 44) Plaintiff argues that, given the evidence of record regarding mental impairments, the ALJ's focus on an absence of evidence of psychiatric hospitalization, without more explanation, was not sufficient cause to detract from Plaintiff's credibility.

While inpatient hospitalization can be indicative of serious mental health symptoms, a lack of hospitalization does not necessarily mean that the individual's symptoms are not disabling. The Commissioner characterized Plaintiff's treatment as conservative, yet never explained how or why this diminished the severity of his symptoms. *See Thomas v. Colvin*, No. 13 C 3686, 2015 WL 515240, at *4 (N.D. Ill. Feb. 6, 2015); *Martinez v. Astrue*, No. 2:10–CV–370–PRC, 2011 WL 4834252, at *8 (N.D. Ind. Oct. 11, 2011)("The ALJ may "consider

conservative treatment in assessing the severity of a condition," but should cite medical evidence about what kind of treatment would be appropriate); *Brown v. Barnhart*, 298 F. Supp. 2d 773, 797 (E.D.Wis.2004) (citing *Dominguese v. Massanari*, 172 F. Supp. 2d 1087, 1096 (E.D.Wis.2001).

The ALJ also noted Plaintiff's appearing "motivated in increasing family interactions and increasing interest in music." These incidental facts, while included in the ALJ's argument against Plaintiff's credibility, were not rooted or connected to any argument as to why Plaintiff should be denied disability benefits. Neither do an interest in family music undermine allegations of an inability to work. The ALJ is required to articulate how and why any cited evidence does or does not support the ALJ's claims. *See Kinard v. Colvin*, No. 13 C 4363, 2015 WL 2208177 at *2 (N.D. Ill. May 7, 2015)("To the extent the ALJ believed the cited medical evidence detracted from the veracity of Plaintiff's testimony, he should have said so explicitly and conducted at least a cursory analysis.); *Lopez v. Barnhart*, 336 F.3d 535, 539-40 (7th Cir. 2003) (explaining that an ALJ's credibility finding must "be supported by record evidence and [be] `sufficiently specific to make clear . . . to any subsequent reviewers the weight [given] to the individual's statements and the reasons for that weight.'").  Accordingly, the above errors also indicate that a remand is necessary.

<u>Conclusion</u>

On the basis of the foregoing, the ALJ's decision is hereby REMANDED for proceedings consistent with this opinion.


Entered: October 2, 2017.

<div style="margin-left:50%">

s/ William C.  Lee
William C. Lee, Judge
United States District Court

</div>